Our last case this morning is CHOC-Ninja v. iRobot Corporation, 2023-1151. Mr. Tucker. Good morning, your honors. May it please the court. The board made two different errors below. First, the board misconstrued, disposed within the round housing perimeter to add the modifier entirely without sufficient support. Under the proper construction, which does not include this modifier, there's no dispute that the BISSETT prior art satisfies the limitation. Well, if the claims were not meant entirely within, certainly in other portions of the claims, we see extending beyond. So isn't it clear that disposed within must mean entirely within? So I think your honor is talking about the side brush element that is in, also appears in claim 55. I don't think so. And I think the reason is because claim 55 and the other independent claim specify where both the side brush elements and the primary brush or the cleaning head are. Those claims do not say where they are not. And I think to understand that point, what this broad comprising claim means, we have to consider the context of those two elements in the context of the 511 patent as is described in the abstract, but also recited, for example, in claim 55. So the side brush certainly does need to extend beyond the perimeter, Judge Lurie, as you said. And this makes sense in the context of the function that the side brush... It's expressing the claims. It's expressing the claims and also makes sense in the context of the function that the side brush performs, as described, for example, in the abstract, where it sweeps outside the perimeter to sweep the debris into the path of the cleaning head. And then claim 55 says that it is swept inside the path of the cleaning head. And of course, the cleaning head or the primary brush need to be disposed within the perimeter in order to pick up that debris. But they complete that function. They satisfy what they need to do in the context of the claim and the specification, even if that primary brush or cleaning head is also partially outside of the perimeter, so long as it is disposed within the perimeter. The cleaning head will collect the debris that was swept up by the side brush as long as it is within, even if it is also partially without. And that was my point, Your Honor, is that I don't think the side brush limitation and the primary brush limitation are mutually exclusive, such that the side brush limitation requires the primary brush to be only within. The primary brush will still satisfy what it needs to do to collect that debris as long as it is at least partially within and not entirely within the perimeter. How about the side brush extending beyond? Does that mean some of it can be or has to be within the scope of the perimeter? Actually, in the preferred embodiment that's disclosed in Figure 2, the side brush is both outside of the perimeter and within the perimeter, Your Honor. So what if it was entirely outside the perimeter? Would it still meet the extending beyond requirement? I don't know how it could be physically attached to the vacuum and still fulfill the purpose of the side brush, which is, again, to sweep everything back into the perimeter, right? So I think that it does need to be partially within the perimeter in order to, again, like I said, satisfy the context of that claim where it needs to sweep from the outside back into the inside to the path of the cleaning head. Speaking of surrounding claim language, Claim 56 depends from Claim 55 and also supports not reading in this injecting this modifier to be entirely within the round housing perimeter. Claim 56 further requires that there be a subcomponent of the cleaning head, which is the primary brush assembly, and further specifies that it is also disposed within the housing perimeter. There would be no reason for Claim 56 to say that if Claim 55 already required that the entirety of the cleaning head be within the perimeter. There would be no reason to further specify  Well, how do we know that the cleaning head of 55 has to include a powered primary brush assembly? Isn't 56 narrowing 55 by making clear that the cleaning head itself has to at least have a powered primary brush assembly? It is, Your Honor, and we did not take the position that the entire claim is superfluous or redundant. We took the position that the phrase that the cleaning head has to be disposed within the housing perimeter is what would be redundant or superfluous. I think the parties have exchanged some different cases on those points, but at least the Apple versus Amaranth case that we cited in our brief supports the position that it doesn't necessarily have to be the entire claim that is superfluous or redundant, but it could be a part of the claim construction. Maxim still applies even if you're rendering part of the claim element. So you agree that under the board's construction, Claim 56 is not superfluous. Claim 56 itself is not entirely superfluous. I agree with you, but the portion of Claim 56 that recites that the primary brush assembly is disposed within the housing perimeter, that portion of the claim is certainly superfluous or redundant. The board also, when it was analyzing this term, looked to one other part of the claim, which is the phrase freely turn when proximate to obstacles. The board determined that that phrase further required absolute encapsulation of the primary brush or cleaning head within the perimeter. This is wrong for a number of reasons. First of all, it is entirely based on the board's unsupported assumption that, quote, freely turning in the claim requires a full 360 degrees. There's no support in the record for that. It's also based on the unsupported assumption that proximate to, which really just means near to, would require the vacuum to be right up, abutting up against an obstacle. So effectively, the board is reading this limitation to require a full 360 degree rotation when right near an obstacle, and there's no support in the specification or the claims for that. iRobot points to its expert report on this point at A5200 paragraph 108, but there's no disclosure or there's no opinion there about requiring 360 degrees or abutting up against an obstacle. I would like to just point out one other point about the dispute between the parties. I think there's been a counter argument that we are trying to inject a modifier of our own, either partially or substantially. I want to make clear that that's not our position. Our position is that the claims do not require any modifier. As such, they are broad enough to encompass partially, substantially, or entirely within. That's the plain language of the claims, and there's nothing in the specification to undo that. There's no definition in the specification that would require a narrower construction. If there are no more questions about claim construction, I'd like to briefly touch on the second issue, which is that even under the board's construction, the board erred in finding that it wouldn't have been obvious to modify BISSET to have its brush bar be disposed entirely within the housing. The BISSET configuration, the brush bar extends slightly beyond the housing. On this point, we provided several pieces of evidence and argument for why one skilled in the art would find it obvious to shrink BISSET's brush bar and move it in between the wheels. One point was that another reference, the Toyota reference, disclosed a similar configuration to what our proposed modification was to BISSET. We said this twice in our petition, and our experts said that twice, pointed that out twice to the board. A second reason was that BISSET's asymmetric protruding brush bar caused problems for both cleaning and for navigation. We explained with expert support that it would bump into the walls, and it would also limit the number of navigational paths that the robot could take. And finally, we explained that with BISSET's asymmetric configuration, the wheel of one of BISSET's vacuums would advance in front of the protruding brush bar such that it would trample over the dirt that that brush bar was trying to collect. And so it made sense to shorten the brush bar to alleviate that problem. Those were three pieces of evidence that the board ignored. And I know that it is a substantial evidence standard of review, but here the board's own opinion highlights that it ignored this argument and evidence. Where did you point to these three pieces of evidence in connection with the limitation that we're talking about, and do it in a way other than making it seem like you were making merely a design choice argument? Sure, Your Honor. So the claims on appeal are claims 24 and 55. We proved claim one to be unpatentable, but the analysis for claim one ended up being very similar to claims 24 and 55. And so we referenced that analysis. But the points I'm going to point you to are in the context of claim one. But we made that argument with regard to claim one and then incorporated it over 25. I just want to give you that context. So we explained that the asymmetrical protruding brush bar, the second point I made was problematic for cleaning and navigation at A1025 to A1026. And we also cited Dr. Pryor's testimony at A1886 to A1888, that's 55 and 56. We then further explained at A1039 in the petition, supported by A1904 paragraph 74 of Dr. Pryor's declaration, that the asymmetrical brush bar could then be removed. The one that had been just shown to cause those problems could be removed after you added the side brushes. At A1039 and A1904 paragraph 74, we explained the point about the wheel trampling over the dirt. And at A1039, we also explained that Toyota disclosed a configuration similar to the modification. The board, looking at all that, thought your contention was this is merely a simple design choice. Isn't that a fair reading of the contention you were making? So I don't think it's a fair reading because if you look at what the board said, it said, and this is a quote from A19, it is not enough to simply state that the protruding brush bar is not necessary. Before that it said, petitioner had not articulated a reason for changing this design. I submit that those statements by the board demonstrate that it did not substantively engage with our argument, either directly or implicitly, because it characterized it as just a design argument and simply stating that the brush bar was unnecessary when we did more than that. And I think the provisor tech versus Weber case that we cited at Blue Brief 37 shows that that is error. Unless there are questions, I'll reserve what time I have. We will save it for you. Thank you. Thank you, Judge Lurie, and may it please the court, John O'Quinn on behalf of iRobot. The board properly construed claims 24 and 25, excuse me, 24 and 55 of the 511 patent to require that the primary brush or the cleaning head be entirely inside the round boundary created by the housing perimeter. Shark Ninja's arguments to the contrary on appeal about the meaning of the term disposed within the perimeter are inconsistent with this court's precedence on claim construction, including the Seminole-Phillips decision, as well as the ordinary meaning of the claim terms as used in the context of the specification, particularly when juxtaposed with other terms, as you were referring to earlier, Judge Lurie. Shark Ninja's further arguments on appeal about obviousness under the board's construction are not grounded in the arguments that it actually presented below in its petition, much less the record evidence. The Brewer and Fritz part, however, addressed the arguments that Shark Ninja actually developed, and it properly rejected them, and substantial evidence supports the board's decision that Shark Ninja failed to prove factually that a skilled artisan would have been motivated to modify the prior art to arrive at the invention claimed in claims 24 and 55, and that decision should be affirmed. Now, I'm happy to start with claim construction if the court has questions about that. I'm also happy to go straight to the issue of motivation. On the claim construction, what do you say to the contention that side brushes extending beyond don't really support you, the argument that we heard today, that that distinction you want to make between disposed within and extend beyond doesn't really have the weight that you have contended it does? Sure. So, Judge Stark, I think first, just to take a step back, I mean, our fundamental position is that the term disposed within a perimeter means arranged inside a boundary, and that the use of the term within is being used to create a relationship within as a preposition. It's used to create a relationship with a round perimeter, and in that type of boundary relationship, the ordinary meaning in context would be that it needs to be entirely on the inside. Now, I think that the use of the term extending beyond with respect to a different attribute, that is the side brushes, they may or may not be mutually inconsistent. I'm not arguing that they have to be, nor did the board have to find that they were in order for them to support its position, but I think what's very, very telling is that every single example in the specification, in showing, in referring to, in identifying the primary brush or the cleaning head, that it is described as being schematics according to the present invention, that are entirely inside. In contrast, that is entirely inside a structural envelope, in contrast to the side brushes, which clearly and explicitly in the specification extend beyond the structural envelope. In fact, my colleague made the point that what they need to do, and the specification says this, they need to sweep material that are outside the perimeter, outside the periphery, that's the language of the specification. For example, at appendix 50, column 825, appendix 50, column 860, or into the envelope in order to pick up debris. That means that the primary brush, which is what has suction that is included with it, or the cleaning head, you don't even have to have a cleaning brush, you could just have a cleaning head with suction, needs to be within the perimeter because that is the path that the debris is being swept into. I'm not saying that it's dispositive or that any one of the pieces of evidence from the intrinsic record that the board relied on was dispositive, but I think that juxtaposition of something that extends beyond versus something that is referred to as being disposed, that is arranged within a perimeter, is powerful evidence that the board got it exactly right. How about the claim 55 versus claim 56, and whether some part of 56 is superfluous? Is that how we should analyze it, or should we just be content in saying everybody concedes it's not entirely superfluous, so how does it help the petitioner? Yes, so Judge Stark, I think it would be one thing if claim 56 itself was entirely superfluous. If claim 56 was entirely redundant, you typically claim differentiation, the principles of claim differentiation would generally say you don't read it that way unless you absolutely have to. But what you have is, yes, there is admittedly some repetition at the end of claim 56. It's the same language that you see in claim 55. It's the same language, frankly, that you see in claim 24 that's being cut and pasted and appearing in multiple places. I think this court in simple error made it clear that differentiation or the rule against superfluity is not an inflexible rule. Instead, claims must always be read in light of the specification. And here, I think that when you look at the repetition, there's a certain amount of repetition that's going to apply under either construction. So, for example, there's been a lot of focus on the language about disposed within the round housing perimeter, but then you have the other part, and position to engage a floor surface. And that seems like that would be equally repetitious once you have added a primary brush to the cleaning head. And frankly, given their own admissions at the hearing, that even under their view of disposed within, that it's got to be essentially substantially disposed within, not something that's sticking out just a little bit. It seems like their own construction would also result in there being repetition either way, because it's kind of hard to imagine. And if you look at the figure, for example, figure 5A, it's page 16 of our red brief, it's really hard to imagine what it would look like to have a brush within a cleaning head that would be entirely outside the perimeter. It would be like a giraffe's neck sticking out of the dish-like subject. And they themselves have said that they don't mean that their construction means that it can only stick out a modest amount. They admitted that to the board at the hearing. So, again, I think under the Supreme Court's decision in Ali v. BOP, this court's decision in Simple Air and others, the fact that there may be some repetition is not something that should trouble the court. There's a lot of repetition that finds its way into claims. And you can see similar repetition in claims 24 and 25 in talking about the side brushes. But it doesn't render the dependent claim meaningless. And when you look at the specification as a whole, it certainly makes sense to read it exactly the way that the board did. What about the freely turning point? Did the board have evidence for its finding that the primary brush would have to be entirely within in order for the device to freely turn? This is the board's decision at pages 8 and 10 of the appendix. It cites the patent owner response, which is Appendix 1309, which in turn cites our expert that addressed this issue, which is Appendix 5200. So, yes, the board had substantial evidence before it. The board also may have referred to the language in Claim 55, but the specification makes the same point. If you look at Appendix 47, Column 2, Lines 3 through 5, and Appendix 49, Column 5, Line 60, the specification itself talks about what they're trying to do is to come up with a device that can affect a, quote, wide range of turning maneuvers, e.g. sharp turns, gradual turns, turns in place, spin on a dime. And that's in the specification itself, and I think that supports the board's approach with respect to Claim 55. And, of course, the board's reference to Claim 55 in assessing its interpretation not only of other parts of Claim 55, that is, the relationship about a perimeter and what it means and what the utility of having a round housing perimeter would actually be is, of course, consistent with this court's decision in Phillips 415 F3rd at 1313 to 1314, that, of course, you can look at other claims to help get context for language that appears in multiple claims. I don't have any other claim construction questions. Thank you. Turning to the issue of obviousness, and really the only issue that is on appeal is their request for a remand for the board to, as they argue, to consider their arguments. The board properly rejected the design choice arguments that they actually made, and you can see those arguments are actually made at Appendix 1308 and 1309, and the board did so based on the facts, and it didn't overlook any arguments. And the argument that they're making now is to suggest that they had wholesale incorporated other sections within their petition, and to argue those with respect to Claim 24 and Claim 55, when they really were different arguments. And, in fact, the only reference to the earlier argument that they are making in Sections Appendix 1021 to 1026 of their petition just stands for the modest proposition that a person would have been motivated to add brushes. Understood. That's what the board agreed with them on that with respect to Claim 1. But they then tried to take the arguments they made about why you would be motivated to add a brush, and then say, ah, well, those same arguments meant that you would be motivated to get rid of the sidebar altogether. That is not the argument that appears in their petition. In fact, the use of the word substitute appears for the first time in their reply brief, and that is not the reasoning that the board followed with respect to its analysis of Claim 1. It didn't think that a person, or didn't say that a person of ordinary skill in the art would be motivated to substitute side brushes to do away with what was the primary advantage of the Bisset reference, which itself was a Dyson vacuum cleaner design to allow you to have suction all the way up to the wall, all the way up to the baseboard. And so the three pieces of evidence that my colleague referred to today are simply not points that they argued below. They did not argue first that Toyota was a source of motivation. The entirety of their argument, again, is Appendix 1038 to 1039. It relies on paragraphs 72 to 77 of their expert prior, and their points were, number one, that the protrusion from Bisset is no longer necessary, that number two, debris would disadvantageously contact the wheels, and that three, Bisset's brush bar and configuration is simply a design choice, and the primary brush could be located within the wheels. This is similar to Toyota's configuration. And the two references to this is similar to Toyota's configuration are the sum of substance of what they say about Toyota with respect to its primary brush. There's no discussion about Toyota as motivating it. It is simply false and misleading when they say that they argued Bisset, quote, in combination with Toyota's centrally located brush bar at page 46 of their opening brief. There is no such combination in the petition. And the idea that this is, quote, similar to Toyota, that that's supposed to suggest to the board that Toyota would motivate something, I think is asking the board, as this court recently observed, to act as an archaeologist, to go digging through the record and find things that they didn't really argue in the first place. And the fact is, simply saying this is similar to Toyota, at most stands for the proposition that a person of ordinary skill in the art could have done it, not that they would have been motivated to do it. And this court, of course, in case after case, such as the InTouch decision, Belden, TQ Delta, and others, has made clear that it's not enough to show that a person of ordinary skill in the art could do something, but they, in fact, must show that they would have been motivated to do it. In this case, the board reasonably found in Appendix 19 that there was functional significance. The adding of suction outside the perimeter served a purpose, and the idea that you were going to take this away for no reason other than design choice is not enough to motivate. Now, what are the other two things that my colleague pointed to? He says that, well, Bassay's bar caused problems. They did not argue that. That is not in the relevant part of their petition, and, in fact, it's not even what they argued in the part of the petition that they are now trying to recast, where they're trying to recast their arguments about adding side brushes into arguments about substituting or modifying Bassay. The only point that was being made both in the petition and by their expert, and that the board accepted with respect to Claim 1, is that, yes, once you have added side brushes, you've got more choices. You've got more options. They were arguing you would add side brushes to both sides, and the board said, well, sure, that once you've added side brushes to both sides, then it's easier to navigate because you can sweep on one side or you can sweep on the other side. You don't just have a bar on one side. That makes it easier. There are advantages to adding things, but they're now trying to recast these as points about wholesale substitution or removal taking away the functional benefit that Bassay's protrusion provided, and that's not something that they argued below in the pertinent parts of their petition. It's not something that their expert argued below either. Then that leaves their third piece of evidence, which was the wheels disadvantageously contacting the dirt. Respectfully, this is an utterly conclusory one-sentence phrase that appears in their expert's report with no explanation. In their petition, I'm sorry, I see I'm past my time. May I finish this? You can certainly finish your sentence. Thank you, Judge Lurie. It's in the petition without any explanation, and I would point you to their brief here on appeal. There's no developed argument whatsoever about why this is a problem and why retreating it into the inside as opposed to moving it to the front or somewhere else or doing any other number of things would have been what a person of ordinary skill in the art would have been motivated to do. And so with the court's indulgence, my very last point would be to say that is exactly the kind of conclusory expert testimony that this court has rejected in cases like TQ Delta and others. And unless the court has further questions, I thank the court for its time. Thank you, counsel. Thank you, Judge Lurie. If Tucker has a little rebuttal time. Thank you, Your Honor. I'll start with claim construction. I agree with Mr. O'Quinn that not one of these pieces of evidence are dispositive. And I think the problem here is that iRobot is the one asking for the narrower construction than the plain meaning, and so they need to point to something dispositive. On the plain meaning, we appear to disagree as to what the scope of that plain meaning is. We would point the court to the cases that we cited in our brief, such as Duncan Parking and Rembrandt, that found that the plain meaning of within, even disposed within, doesn't require entirely within. On the freely turning point, on the requirement that freely turning must be 360 degrees and proximate to an obstacle requires abutting an obstacle, there is no evidence. And the part that Mr. O'Quinn pointed to, Appendix 5200, Paragraph 108, is the exact part I pointed to in my opening brief. It doesn't talk about 360 degrees. It doesn't talk about abutting an obstacle. Even spinning on a dime in the specification doesn't disclose spinning a full 360 degrees when you're right up next to an obstacle. On the obviousness point, we did address each of Claims 55 and 24 and explain how those arguments from Claim 1 relate to those claims. For example, Claim 55 at Appendix 1074, that's the discussion of Claim 55 relating back to Claim 1. We also did point to Toyota when making the modification to VISIT. At Appendix 1039, twice we said, this is similar to Toyota's configuration. The fact of the matter is, as disclosed at Appendix 1022, Toyota discloses this primary brush bar right in the middle of the circumference of the vacuum and right in between the wheels. This is not a difficult modification that was being made. It is a simple mechanical design.  Whether we're fighting over if this was a combination or a modification, it can't be disputed that we relied on Toyota for the modification itself. I see that I'm over my time. If there are any questions, I'm happy to answer them. Thank you to both counsel. The case is submitted. That concludes today's arguments.